UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRETT ROBERTS,<br><br>        Plaintiff,<br><br>    v.<br><br>DAYMON WORLDWIDE INC., et al.,<br><br>        Defendants. | Case No.  15-cv-00774-WHO<br><br>**ORDER GRANTING PLAINTIFF LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 53 |

## INTRODUCTION

Plaintiff Brett Roberts seeks to amend his complaint, which arises from his termination by defendants Daymon Worldwide Inc. and Omni Global Sourcing Solutions Inc., to add two causes of action for intentional and negligent misrepresentation.  Defendants oppose on the grounds that Roberts has demonstrated a lack of diligence in pursuing his claims and that his proposed amendments are futile.  Oral argument is unnecessary and the hearing on January 27, 2016 is VACATED.  Because I find that there has been no undue delay and Roberts's claims are not preempted by the Employment Retirement Income Security Act ("ERISA"), Roberts's motion for leave to file a second amended complaint is GRANTED.

## BACKGROUND

The facts of this case are fully set forth in a previous order.  Dkt. No. 27.  Relevant here is that in August 2012, Daymon purchased Omni Pacific Company Inc., a company Roberts founded.  Roberts now asserts that both before and after the August 2012 closing date for defendants' purchase of his business, defendants repeatedly made representations that he and other Omni Pacific personnel would be eligible to start participation in Daymon's 401(k) Profit Sharing Plan (the "401(k) Plan") and its Employee Stock Ownership Plan (the "ESOP") beginning on January 1, 2013.  Roberts Decl. ¶¶ 2, 3 [Dkt. No. 53-2].  Specifically, he alleges that from March

2012 through August 2012, Daymon's General Counsel Justin Mervis, its Executive Vice President Dave Rogers, and its General Manager Larry Becker, repeatedly made such representations on the phone, during a presentation at Omni Pacific's office, and on a conference call to discuss pre-closing issues. *Id*. at ¶¶ 4-6.  Roberts states that consistent with these representations, Daymon's Human Resources Business Partner Steve Marklay sent him an email on November 15, 2012 requesting his "official origination date" with Omni Pacific in order to list it in his "PTO conversion statement and also for documentation purposes of your eligibility to start 401K participation on 1/1/13 with all other [Omni Pacific] associations that have one or more years of service on 1/1/13."  Roberts Decl., Exh. 10.  The email also notes that Marklay believed Roberts had started at Omni Pacific in 1991. *Id*.

Despite Roberts's reliance on defendants' representations that he would be eligible to begin participating in the 401(k) Plan and ESOP in January 2013, Roberts was never allowed to participate in the ESOP and was only allowed to participate in the 401(k) Plan in July 2013. Roberts Decl. ¶¶9-10.

On July 27, 2015, as part of the discovery process, defendants produced approximately 250 pages of documents, including several pages of internal emails.  Travis Decl., Exh. 3 [Dkt. No. 53-1].  Roberts's counsel contends that these emails demonstrate that "[d]efendants were not planning to allow Omni Pacific personnel to participate in the ESOP beginning January 1, 2013 and that there was even doubt about whether they would be allowing Omni Pacific personnel to participate in the [401(k) Plan] beginning January 1, 2013."  Travis Decl. ¶9.  Roberts was not previously aware of these internal emails.  Roberts Decl. ¶11.  After this discovery, Roberts did not "immediately rush" to amend his complaint because he was waiting for further documents related to the misrepresentations and other potential amendments. *Id*. ¶¶13-14.  Although Roberts is still waiting for documents related to defendants' 401(k) Plan and the ESOP, he nevertheless brings the motion for leave to amend to allow him to add claims for intentional misrepresentation, and, in the alternative, negligent misrepresentation, related to statements defendants made to him about his participation in the 401(k) Plan and ESOP. *Id*. ¶15.

United States District Court
Northern District of California

**LEGAL STANDARD**

Federal Rule of Civil Procedure Rule 15 directs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts consider five factors in deciding whether to grant leave to amend in this context: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Of these factors, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "In exercising its discretion a court must be guided by the underlying purpose of Rule 15 – to facilitate decision on the merits rather than on the pleadings or technicalities." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (internal quotation marks omitted).

With respect to the futility factor, an amendment is futile where the amended complaint would be immediately "subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). Thus, the "proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *accord Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) *on reh'g en banc*, 681 F.3d 1041 (9th Cir. 2012); *Lovett v. Omni Hotels Mgmt. Corp.*, No. 14-cv-02844-RS, 2015 WL 5882054, at *2 (N.D. Cal. Oct. 8, 2015); *Stubbs v. Covenant Sec. Servs., Ltd.*, No. 15-cv-00888-JCS, 2015 WL 5521984, at *6 (N.D. Cal. Sept. 16, 2015).

**DISCUSSION**

Roberts argues that he should be given leave to amend his complaint under Rule 15 because: (1) there is no substantial prejudice to defendants; (2) there has been no undue delay; (3) the amendments are not brought in bad faith; and (4) they are not futile. Mot. [Dkt. No. 53]. Defendants oppose primarily on two grounds: that Roberts showed lack of diligence in pursuing his claims and that his amendments are futile because they are preempted by section 514(a) of ERISA. Opp. [Dkt. No. 54]. Neither of defendants' arguments is convincing.

## I.     UNDUE DELAY

Defendants contend that if Roberts's allegations are true, then the explicit representations regarding his ability to participate in the 401(k) Plan on January 1, 2013 would have been revealed as false on January 2, 2013, when he was not yet granted the ability to participate.  Opp. at 3.  He also would have known that he was not a participant in the ESOP sometime during 2013.  *Id*. Roberts responds that prior to the July 27, 2015 document production, he had no reason to believe that the representations were "actionably false" because defendants "had a habit of tardy and 'catch-up' performance throughout his relationship with them."  Reply at 2 [Dkt. No. 55].  For example, he claims it was not until he was terminated that he was paid retroactively for amounts due for raises in 2013 and 2014.  *Id*.

Defendants also assert that the November 15, 2012 email from Marklay to Roberts is "fatal" to Roberts's claim because it demonstrates that his eligibility to participate in the 401(k) Plan was being determined, but not yet confirmed.  Opp. at 3.  However, the plain language of the email does not support that interpretation.  In the email, Marklay states that he believes Roberts began working for Omni Pacific in 1991 but is requesting a specific "official origination date…for documentation purposes of your eligibility to start 401K participation on 1/1/13 with all other [Omni Pacific] associates that have one or more years of service on 1/1/13."  Roberts Decl., Exh. 10.  Roberts asserts, as supported by the email, that Marklay knew that Roberts would have completed one or more years of service on January 1, 2013.  In the email, Marklay does not communicate that defendants doubt Roberts's ability to participate in the 401(k) Plan starting on January 1, 2013, only that a specific date is needed for documentation purposes.

Defendants' argument regarding Roberts's diligence is not supported when it cites to cases decided under the more stringent "good cause" to amend standard of Rule 16, rather than the more lenient standard of Rule 15 under which this motion is properly evaluated, and cases where the court also found future amendment futile. [1]  Roberts's explanations for the delay in adding the

---

[1] *See Rosales v. FitFlop USA, LLC*, No. 11-cv-0973, 2013 WL 3049122, at *3 (S.D. Cal. June 17, 2013) (denying the motion to amend for not first moving to amend the scheduling order and failing to demonstrate "good cause" under Rule 16); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) (finding further amendment futile and further holding that a district court does

United States District Court
Northern District of California

1  new causes of action are plausible.  The emails produced in July 2015, provided him with new

2  information.  After attempting to secure a stipulation to amend, he filed this motion.  His conduct

3  does not constitute undue delay under Rule 15.

4  **II.       FUTILITY OF AMENDMENT**

5          Defendants also contend that Roberts's amendments are preempted by ERISA section

6  514(a).  This section provides that ERISA will "supersede any and all State laws" to the extent

7  that those laws "relate to" any employee benefit plan that is subject to ERISA.  29 U.S.C. §

8  1144(a).  The term "State law" includes statutory, regulatory, and common law.  29 U.S.C. §

9  1144(c).  Defendants argue that Roberts's claims for intentional and negligent misrepresentation

10  "relate to" the employee benefit plan under ERISA and, as such, are preempted.  Opp. at 4.

11          At one time, the Supreme Court characterized the scope of ERISA preemption language as

12  "deliberately expansive."  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987).  "More recently,

13  however, the Court has moved away from a literal reading of 'relate to,' towards a more narrow

14  interpretation of the phrase and its preemptive scope*."  Graham v. Balcor Co*., 146 F.3d 1052,

15  1054 (9th Cir. 1998).  In *New York State Conference of Blue Cross & Blue Shield Plans v.*

16  *Travelers Insurance Co*., 514 U.S. 645, 655 (1995), the Court noted that while the text of ERISA

17  is expansive, "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then

18  for all practical purposes preemption would never run its course, for 'really, universally, relations

19  stop nowhere.'"  (citation omitted).

20          Defendants rely heavily on Ninth Circuit cases such as *Olson v. General Dynamics Corp*.,

21  960 F.2d 1418 (9th Cir. 1991) and *Martori Brothers Distributors v. James-Massengale,* 781 F.2d

22  1349, 1351 (9th Cir. 1986), that predate the Supreme Court's recognition that its interpretation of

23  "relate to" must be cabined.  *See Olson*, 960 F. 2d at 1421 ("Given the Supreme Court's directive

24  that ERISA's preemption provision is to be construed broadly, it is difficult to see how

25  [plaintiff's] claim could be found not to 'relate to' an employee benefit plan."); *Martori*, 781 F.2d

26

27  not abuse it discretion "when the movant presented no new facts but only new theories and

28  provided no satisfactory explanation for his failure to fully develop his contentions originally")
   (internal quotation marks and citations omitted).

United States District Court
Northern District of California

at 1356-59 (recognizing section 514(a)'s broad scope, but ultimately finding that the state statute at issue was not preempted by ERISA).  But in *Travelers*, decided after both *Olson* and *Martori*, the Supreme Court acknowledged that its prior attempts to construe the phrase "relate to" is no longer useful.  *Travelers*, 514 U.S. at 655 ("[W]e have to recognize that our prior attempt to construe the phrase "relate to" does not give us much help drawing the line here.").  It instructed courts to "go beyond the unhelpful text [of ERISA] and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide."  *Id*. at 656.

Accordingly, the Ninth Circuit currently counsels that the first step in an ERISA preemption analysis is to "look to the intent of Congress to interpret ERISA preemption." *Graham*, 146 F.3d at 1055.  ERISA is "a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans.  With ERISA preemption, Congress sought to encourage the formation of employee benefit plans by standardizing the regulatory requirements applicable to plan administrators."  *Graham*, 146 F.3d at 1055 (internal citations and quotation marks omitted).  Courts must begin with the "starting presumption that Congress does not intend to supplant state law."  *Travelers*, 514 U.S. at 654.

Congress did not intend to preempt the state law claims asserted here.  Courts have emphasized that section 514(a) of ERISA does not refer to state laws relating to employee benefits but instead to those that relate to employee benefit *plans*.  This reflects congressional concern with uniform regulation of benefit plan administration, not individual agreements affecting only one employee.  *See Travelers*, 514 U.S. at 656 (finding that in passing section 514(a), Congress intended "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law") (internal quotation marks and citations omitted); *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987) ("Congress intended pre-emption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations…. It is for this reason that Congress pre-empted state laws relating to *plans*, rather than simply to *benefits*.") (emphasis in original); *Graham*, 146 F.3d at 1055 (acknowledging the concern for uniformity and finding that because the agreement at issue concerned only one employee, not the entire plan, it fell outside of plan administration and did not trigger preemption).

6

United States District Court
Northern District of California

1    "ERISA does not purport to regulate the broad spectrum of unlawful employment practices

2    that may be committed by employers." *Martori*, 781 F.2d at 1359.  Roberts's claims do not

3    concern the need for unifying plan administration or standardizing the regulations applicable to all

4    plan beneficiaries.  They do not arise out of defendants' administration of the 401(k) Plan or the

5    ESOP.  Instead, they are rooted in alleged false statements made about the compensation Roberts

6    could expect as result of the sale of Omni Pacific.  They are based on a common law duty to

7    refrain from providing false statements, a duty that arises independently from any obligation

8    ERISA may impose on defendants.  They do not "duplicate[], supplement[], or supplant[] the

9    ERISA civil enforcement remedy." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (finding that

10   "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil

11   enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy

12   exclusive" and is therefore preempted).

13        Because the claims do not implicate or advance Congress's goals in enacting ERISA, they

14   are not subject to preemption under section 514(a).  *See Graham*, 146 F.3d at 1055 ("ERISA

15   preemption in this case would not advance these Congressional goals because the [agreement at

16   issue] did not arise in the course of [employer's] administration of its employee benefit plan.");

17   *Blue Cross of California v. Anesthesia Care Associates Med. Grp., Inc.*, 187 F.3d 1045, 1054 (9th

18   Cir. 1999) (holding that because the state laws at issue only had a "tenuous, remote, or peripheral

19   connection with covered plans" preemption was not justified) (internal citations and quotation

20   marks omitted).  Roberts's amendments are not futile.

**CONCLUSION**

22        Roberts's motion for leave to file a second amended complaint is GRANTED.  He shall do

23   so within five days, and the defendants shall answer ten days thereafter.

24        **IT IS SO ORDERED**.

25   Dated: January 25, 2016

26

27   WILLIAM H. ORRICK
     United States District Judge

28

7